GARY M. RESTAINO
United States Attorney
District of Arizona
JOSEPH BOZDECH
California State Bar Number 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: joseph.bozdech@usdoj.gov
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| v. | |
| Twenty-six firearms and ammunition, | |
| Defendants *In Rem*. | |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. § 924(d) because the defendants in rem are firearms involved in or used in a knowing violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.

2. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 924(d) for the forfeiture of any firearm involved in or used in a violation of, or a conspiracy to violate, 18 U.S.C. § 922(a)(1)(A), Unlicensed Firearms Dealing and/or Manufacturing.

3.     Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j) and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355; 18 U.S.C. § 981(h).

### THE DEFENDANTS *IN REM*

4.     The defendants *in rem* consist of the following twenty-six firearms and ammunition:

1.  Ruger 10/22 Rifle Cal:22 SN:248-29345;

2.  Remington Arms Company, Inc. R-15 VTR Rifle Cal:223 SN:RA017073;

3.  Mossberg 500C Shotgun Cal:20 SN:R928283;

4.  Sun City Machinery Co., LTD Stevens 320 Shotgun CAL:12 SN:147167C;

5.  Remington Arms Company, Inc. 597 Rifle Cal:22 SN:B2704839;

6.  Remington Arms Company, Inc. 870 Express Magnum Shotgun Cal:12 SN:A223314M;

7.  Bushmaster Firearms XM15-E2S Rifle Cal:223 SN:BFI685451;

8.  Browning Gold Shotgun Cal:12 SN:2548DU2007;

9.  Mossberg 500 Shotgun Cal:410 SN:U383586;

10. Mossberg 835 Ulti-Mag Shotgun Cal:12 SN:UM617004;

11. Winchester 120 Shotgun Cal:12 SN:L1793592;

12. Mossberg 500 Shotgun Cal:20 SN:T619107;

13. Ruger 10/22 Rifle Cal:22 SN:824-20965;

14. Sig Sauer (Sig-Arms) Sig 556 Rifle Cal:556 SN:44A005052;

15. Remington Arms Company, Inc. 700 Rifle Cal:243 SN:RR77380B;

16. Savage Stevens 59B Shotgun Cal:410 SN:NONE;

17. Marlin Firearms Co. 983T Rifle Cal:22 SN:91642504;

18. Mossberg 500 Shotgun Cal:20 SN:U729753;

19. Benelli, SpA. Nova Shotgun Cal:12 SN:Z485673;

20. Winchester 67 Rifle Cal:22 SN:None;

21. Walther P22 Pistol Cal:22 SN:M092170;

22. Smith & Wesson SW40VE Pistol Cal:40 SN:PBY5971;

23. Ruger P345 Pistol Cal:45 SN:66455427;

24. Makarov Unknown Type Pistol Cal:Unknown SN:AB271870;

25. Quality Firearms Inc. RP38 Revolver Cal:38 SN:SW03777;

26. Glock Inc. 42 Pistol Cal:380 SN:ABYE507;

27. 6 Rounds Ammunition Cal:380;

28. 202 Rounds Assorted Ammunition Cal:Multi; and

29. 52 Rounds Assorted Ammunition Cal:Multi

(collectively the "defendant property").

5.     The defendant property was seized on August 19, 2021 by U.S. Probation and Pretrial Services. On August 25, 2021, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") retrieved the defendant property from U.S. Probation and Pretrial Services. The defendant property is currently in the custody of ATF.

## INTRODUCTION

6.     Convicted felon Klee Lee Morrison ("Klee") is prohibited from possessing firearms and ammunition. However, despite this prohibition, on August 19, 2021 the defendant property was found in a safe in a large shipping container belonging to Klee and located on his property just outside his home. Klee had access to the defendant property, and along with his wife Dejae Morrison ("Dejae"), was illegally selling firearms and ammunition.

## ALLEGATIONS OF FACT

### Klee is Prohibited from Possessing Firearms

7.     On September 16, 2013, Klee was convicted of Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance; Aiding and Abetting; and Possession of a Firearm in Relation to a Drug Trafficking Crime. *United States v. Lashchuk, et al.,* 1:12-CR-17, Doc. 340 (D.N.D). Klee was sentenced to serve two consecutive five-year sentences in prison (for a total of 10 years in all) to be followed by

five years of probation. *Id*. He was prohibited from possessing firearms, ammunition, destructive devices, or any other dangerous weapons. *Id*.

8.      On or about March 11, 2021, after approximately eight years of incarceration, Klee was released and placed under the Federal Location Monitoring Program.

9.      On or about March 11, 2021, Klee moved to Littlefield, Arizona, to live with Dejae.

10.     Klee and Dejae married prior to Klee's 2013 federal conviction.

11.     On March 15, 2021, U.S. Probation Officers ("USPOs") conducted a virtual home visit with Klee and Dejae. USPOs advised Dejae of Klee's probation status. Klee and Dejae stated there were no firearms, alcohol, or dangerous weapons on the property.

12.     Dejae knew Klee was a felon and prohibited possessor.

### The USPO's Home Inspection

13.     On August 19, 2021, USPOs visited Klee's residence, located at 3769 S. Shivwits Dr., Littlefield, Arizona, 86432, for the purpose of completing a home inspection. The USPOs had received a tip that Klee had firearms in a shipping container on the property.

14.     Littlefield is a small rural town of 256 people in the far northwest corner of Arizona. It is located on U.S. Interstate 15 between Mesquite, Nevada (to the southwest) and St. George, Utah (to the northeast).

15.      Present at the residence were Klee, his wife Dejae, and their two minor children.

16.     The USPOs asked for, and received, permission to enter the residence. Klee was informed that they would be completing an inspection of his home.

17.     While in Klee's bedroom, USPOs noticed a container of air gun pellets on his dresser. When asked about any air guns, Klee said they had been removed from the property as he knew it was unlikely he was able to legally possess them.

18.    The USPOs told Klee that their initial visit was the best opportunity for him to disclose any items that may be of questionable legality due to Klee's probation status. The USPOs explained that when such items are located on an initial visit some leeway may be given to properly dispose of such items.

19.    Klee stated that he had nothing of this nature in his possession.

20.    Klee told the USPOs that he had received permission to travel to his father's funeral in Preston, Idaho, from August 4, 2021, to August 8, 2021. Klee admitted that he acquired a firearm from his father's belongings and brought it with him to Arizona.

21.    Klee initially told USPOs he did not know the make and model of the gun.

22.    The USPOs asked Dejae about the location of the firearm brought home from Idaho. She said it was in a black duffle bag in Klee's bedroom. An empty black bag was located in the bedroom.

23.    The USPOs were unable to find the firearm in Klee's bedroom. However, Klee told the USPOs he thought the missing weapon was a Glock.

**Discovery of the Defendant Property**

24.    The USPOs also inspected outbuildings and the remainder of the property.

25.    After searching through several vehicles shown to them by Klee, the USPOs moved their attention to two large steel shipping containers, also known as Conex containers. The containers were positioned on the north side of the home. They were placed side by side and faced south. Conex containers are typically slightly less than eight feet wide and eight feet tall, and anywhere from just under 20 feet long to just short of 40 feet long. Klee said he had purchased the two large containers while working in North Dakota.

26.    One storage container was not locked, and the USPOs inspected it without any notable discoveries.

27.    The USPOs then moved on to inspect the second storage container and found that it was padlocked. Klee used a key to unlock and open the second storage container.

28.     Inside the second storage container USPOs found two safes. One was green and unlocked, while the other was black and locked.

29.     Klee acknowledged that he knew both were in the shipping container. He said he only had access to the opened green safe, and not the locked black safe.

30.     After searching the rest of the second container, the USPOs turned their attention to the unlocked green safe. Inside the unlocked green safe were several air rifles, a hunting crossbow, and two homemade sound suppressors made from automobile oil filters. The USPOs believed the suppressors had been used.

31.     According to ATF Agent Benjamin E. Excell ( "Agent Excell"), an oil filter suppressor is a commercially available automotive oil filter readily available at auto parts stores that has been adapted for use in diminishing the report of a firearm. There is typically a thread adaptor that is used to attach the oil filter to the muzzle of a firearm. An oil filter used in this manner is considered a firearm suppressor and needs to be registered in accordance with National Firearms Act.

32.     Purpose-built suppressors often cost hundreds of dollars and the waiting period to get a tax stamp from ATF is quite long. The oil filter suppressors are rarely if ever registered and mostly used in violation of federal law. The price of the thread adaptor is around $15. An oil filter is usually around $10-20.

33.     Per Klee's probation conditions, it was illegal for him to possess air rifles, hunting crossbows, or suppressors.

34.     The USPOs asked Klee why he had been dishonest when they asked him earlier if he had any air guns or other prohibited items. Klee initially denied he had been deceptive, then claimed he did not remember where the air guns were earlier, believed they may have been in his son's closet, and thought if he omitted this information the USPOs would not find them. He acknowledged this was an attempt to mislead the USPOs and not indicative of someone acting in good faith.

35.     In the green safe, the USPOs also found a black plastic gun case of the type in which Glock handguns are packaged.

36.     Klee denied he had the combination or key for the locked black safe but indicated that his wife did.

37.     When asked about the black safe, Dejae said she needed to find the combination. Dejae said she could not find it after searching through an accordion folder for the combination. Dejae then said she would call her adult son to see if he knew the combination.

38.     Dejae's son spoke to one of the USPOs on the phone. Dejae's son said that to his recollection neither of the safes in the second container had ever been locked, so he did not have, nor did he ever need, a combination to get inside either safe.

39.     After the phone call, Dejae said she had found the combination in an e-mail on her phone.

40.     Using the combination, the USPOs opened the second safe. Inside the black safe they found the defendant property, consisting of several rifles, shotguns, handguns, and many rounds of ammunition.

41.     The defendant property consists of firearms and ammunition that have been shipped or transported in interstate or foreign commerce.

42.     One of the weapons found in the black safe was a Glock Inc. 42 Pistol Cal:380 SN:ABYE507 (Item 26). This gun matched the black plastic Glock gun case found in the green safe. Its description matched the Glock mentioned earlier by Klee and Dejae as having been acquired by Klee at his father's Idaho funeral.

43.     The Glock pistol contained a full magazine and had a round in the chamber.

44.     Based on their earlier conversations with both Klee and Dejae, the USPOs believed Klee likely put the Glock in the black safe after returning from Idaho.

**Klee's Firearm Sales via Text and Facebook Messages**

45.     Based on the weapons and ammunition found, Klee voluntarily gave his phone and unlock code to the USPOs. The USPOs found several text and Facebook messages in which Klee discussed his possession and sales of guns and ammunition.

46.     One series of text messages was sent between Klee and a person identified as "Dakota Katie Js Boyfriend" ("Dakota") in Klee's phone. According to the USPOs, Klee and Dakota were discussing Klee's possession of a .50 cal BMG rifle and Klee's recent sale of a SKS rifle.

47.     The text conversation from June 25, 2021 went as follows:

Klee – *Sends picture of a large, long rifle to Dakota. The gun is on a bed, appears to be between four and five feet long, and has an A-shaped support that holds up the barrel toward its end.* (See Exhibit 1)

Dakota -  "That's so damn cool"

Klee – "That's the 50 big"

Klee – "Bmg"

Dakota– "Like that's the hardest flex ever to be able to tell someone I got a 50cal like that's bad ass"

Klee – "I sold the ska"

Klee – "Sks"

Dakota– "Fuck yeah did u get more out of it instead??"

Klee – "I have 4K rounds for 50 bmg"

Klee – "I got a grand out of it"

Dakota– "A ground out the Sks!!?"

Dakota– "Grand*"

Klee – "Yes with ammo"

Dakota - "Ohhhh ok I was like what the heck"

Dakota - "That's crazy but cool"

Dakota - "Lol"

Klee – "I told you 600 was a steal 1065 rounds alone is a doller a round plus free gun"

Dakota – "Yeah Ik I would have bought it I just don't got the money for it rn and then we were saving up money to get into the new place I just had some bad timeing lol"

Klee – "Copy"

> Dakota – "Heard neko go over to your moms last night in the loud truck from my bedroom yep it is loud"

48.     Despite multiple attempts later to do so, Agent Excell could not verify Dakota's identity.

49.     Another series of text messages was sent between Klee and a person identified as "The Wife A Morrison" in Klee's phone. Agent Excell confirmed that this phone number belonged to Klee's wife Dejae. According to USPOs, Klee and Dejae were discussing travelling to St. George, Utah to sell a SKS rifle, ammunition, and a .223 rifle. The text conversation from June 24, 2021 went as follows:

> Klee – "Thanks for letting me sleep I love you baby"
>
> Dejae – "I love you"
>
> Klee – "Want to drive to St. George this evening to sell your SKS and ammo and also the 223"
>
> Dejae – "Yes sure"
>
> Klee – "We leave at 5 to be there at 6"
>
> Dejae – "Utah time or or time"
>
> Klee – "7 Ut time in Saint George he said has cash wants all"
>
> Dejae – "Okay"

50.     A third series of messages was exchanged between Klee and Ryan Holt (hereafter "Holt") via Facebook Messenger. According to USPOs, Klee appeared to be trying to sell or trade guns, scopes, and ammunition to Holt. In the messages Klee boasts about the large amount and variety of guns and ammunition he possesses. The Facebook Messenger conversation from July 24, 2021 and July 25, 2021 went as follows:

> **July 24, 2021**
>
> Holt – "You named the group Klee · Vortex Diamondback HD 12 by 50."
>
> Klee – "What are you looking to trade?"
>
> Holt – "I'm wanting to get a pistol or scope or something in that area"
>
> Klee – "What kinda pistol?"

Klee – "What kinda scope"

Klee – "38 snub"

Holt – "I was hoping to get a 9mm or 45. I'm interested in vortex scopes. What kind of snub?"

Klee – "I might actually have vortex let me go look"

Holt – "Awesome"

Klee – "I will have to look in morning I have one somewhere if the boys haven't laid ownerships ,teenagers loose my binoculars and steel my sweet toys I will let you know in morning, is that all interested in ?"

Holt – "Alright sounds good! I mean I'm interested in a lot of different things. Do you have any ideas?"

Klee – "I have .223 ammo , some shot guns , heck I don't know I have all kinda things , except a working pair of binos haha"

Holt – "What kind of shot guns do you have?"

Klee – "870 , bennelli , mossberg brownie"

Klee – "They all with more than pair of binoculars"

Klee – "Sorry it's getting late I ment worth not with"

Holt – "No worries! What type of bennelli do you have? And would you be willing to trade for it?"

Klee – "Super nova 2/3/4 and 3half inch yes willing to trad more"

Holt – "It's a 12 gauge right?"

Klee – "Yes"

Klee – "Sorry"

Klee – "Black synthetic pistol grip with stock"

Klee – "I think I haven't seen it for a while I get you a picture tomorrow"

Klee – "It's in the back of the safe the kids never use it"

Holt – "Awesome thanks! I am definitely interested in trading! What models are your 870 and mossberg? If you could send pictures sometime that would be great!"

Klee – "Let's swap pics in morning I will send you pics of all , church is early , I will send when I get up"

Holt – "Sounds great thanks!"

**July 25, 2021**

Klee – "I haven't forgot just busy"

Holt – "No problem! I will be busy today as well, tomorrow would work well for me"

Klee – "K me also"

Klee – *Three image attachments*

Holt – "Those are sweet! What models are each one? Also, where do you live? And I don't think I've ever seen a scope on a shotgun. How does that work?"

Klee – "That's the 22 I told you"

Klee – "The wood is 870. Express magnum, the black is bennelli super mag"

Holt – "Okay awesome! Would I be able to come check them out?"

Klee – "What are you thinking for remaining value ?"

Holt – "What else would you be interested in?"

Klee – "Whatever"

Klee – "Just fair market value"

Holt – "I have a leather man I could throw in?"

Klee – *Two image attachments*

Klee – "The 22 is a Remington 537 semi auto I would trade that straight across"

Klee – "Minus the scope"

Holt – "I probably wouldn't trade for a 22. My binoculars are diamond back hd not the crossfire."

Holt – *One image attached*

51.     According to USPOs, the messages from Klee to his wife Dejae, to Dakota, and to Holt clearly showed that Klee was actively and illegally selling a variety of guns and had access to the defendant property in the black safe.

52.    The messages between Klee and Dejae also plainly showed that Dejae was aware Klee had access to guns and that she planned to assist him with the sale of firearms to a person in St. George, Utah.

53.    A USPO informed Klee that it was clear he possessed the defendant property. Klee said they must have seen the messages on his phone.

54.    When asked by the USPO to clarify what he meant, Klee said that the firearm in the text messages was the one he received in Idaho at his father's funeral. He described it as a "little black one." Klee said someone quickly handed it to him unexpectedly. He said he quickly handed it back to the person and said he could not possess guns. Klee said that his wife then transported the gun in the vehicle they both were traveling in back to Arizona.

**Seizure of the Defendant Property**

55.    Based on the location of the defendant property near Klee's home, his admission to having had his father's Glock, his access to the second storage container, his access to the defendant property in the black safe, his access to prohibited items in the green safe, his admitted misleading statements to USPOs regarding prohibited items, Dejae's admission that Klee had brought home his father's Glock, and his text and Facebook messages regarding the possession and sales of guns and ammunition, U.S. Probation and Pretrial Services seized the defendant property on August 19, 2021.

56.    Klee had actual or constructive possession of the defendant property.

57.    Dejae was aware Klee had access to the defendant property.

58.    Dejae was aware Klee was prohibited from possessing the defendant property.

59.    On August 19, 2021, Klee was arrested and returned to Bureau of Prisons Custody for violating the conditions of his release.

60.    On August 25, 2021, ATF retrieved the defendant property from U.S. Probation and Pretrial Service.

**Administrative Claim by Dejae Morrison**

61.     On October 26, 2021, Dejae filed an administrative forfeiture claim to the defendant property.

62.     In the administrative claim Dejae stated that she had an interest in the defendant property. She said:

> Some were bought new and registered to me some were bought or gifted from family and others were legally purchased from individuals, all were locked in a safe behind a locked door on property I am the sole renter on the rental agreement, I can describe or have information from everyone who sold me these most are close friends or family or I purchase them from reputable stores

63.     When asked in the administrative claim to provide documentation to support her interest in the seized defendant property, Dejae said:

> They were taken from my possession by officers that do not have right to take or jurisdiction in Arizona, I am an innocent owner and legally can possess

64.     On December 1, 2021, ATF referred the case to the United States Attorney's Office in Phoenix, Arizona for judicial forfeiture proceedings.

**Klee Morrison's Criminal Background**

65.     Klee has the following federal arrests and convictions:

a. 03/29/12 – arrested for: Dangerous Drugs and Possession of Weapon; Possession with Intent of Crystal Meth; Possession with Intent of Crystal Meth; Conspiracy No Specific Drug; Conspiracy No Specific Drug; Conspiracy No Specific Drug; Abetting No Specific; Abetting No Specific; Abetting No Specific. Sentenced to 120 months prison and 60 months probation.

b. 11/01/13 – arrested for: Conspiracy to Possess With Intent to Distribute; Distribute; Aiding; Abetting; Possession of Firearm in Relation to Drug Trafficking. Sentenced to 60 months prison and five years probation.

c. 01/09/22 – arrested for probation violation. Sentenced to 6 months prison and 54 months probation.

66.     Klee has the following Idaho state arrests and convictions:

a. 02/27/02 – arrested for probation violation.

b. 07/25/02 – arrested for Ill Sell/Buy/Possess Species; Firearm-Unlawful Possession. Sentenced to 1 to 5 years prison.

c. 01/28/03 – arrested for probation violation. Sentenced to 1 to 5 years in prison.

d. 03/03/04 – arrested for probation violation. Sentenced to 2 to 7 years in prison.

e. 11/02/22 – arrested for Murder; Evidence Destruction, Alteration, Concealment; Criminal Conspiracy; Death – Failure to Delay Notification of Death.

67.     Klee has the following North Dakota state arrest and conviction:

a. 10/05/11 – arrested for Possession of Stolen Property. Sentence deferred for two years.

68.     Klee, who turned 38 years old in 2022, has an extensive criminal history spanning 20 years, more than half his life. He has had multiple felony convictions involving weapons and drugs and has been incarcerated multiple times. Based upon his arrests, convictions, incarcerations, and years on probation, Klee and his wife Dejae were aware that Klee was a convicted felon and as such was prohibited from possessing the defendant property.

69.     Klee was arrested on November 2, 2022, and is currently being prosecuted in the State of Idaho for a murder involving a firearm.

70.     According to Agent Excell, it is common for felons on probation with extensive criminal records involving drugs and firearms to illegally possess firearms and commit further crimes.

**The Morrisons' Financial Background**

71.     According to research by Agent Excell, Klee had no reported income in Nevada, Arizona, or Utah over the past five years.

72.     According to research by Agent Excell, Dejae had no reported income in Nevada, Arizona, or Utah over the past five years.

73.     According to Agent Excell, the defendant property had a street value of approximately $5,440.

74.     Agent Excell believes that, since it was difficult for Klee to get work, Dejae and Klee sold firearms to supplement Dejae's modest income.

**Agent Excell's Investigation of Klee and Holt's Text Messages**

75.     Based on his review of the text messages sent between Klee and Holt, Agent Excell determined the following:

a.  The "38 snub" Klee suggested he could trade was likely in reference to a .38 caliber snub-nosed revolver;

b.  When Klee said he could trade .223 caliber ammunition and shotguns, and then lists "870 , bennelli , mossberg brownie," Klee was likely referencing a Remington model 870 shotgun, a Benelli shotgun, and a Mossberg Brownie, which is a small .22LR caliber pistol;

c.  Klee further clarified that the model of the Benelli shotgun was a SuperNova and would accept 2 ¾, 3 ½, and 12-gauge shotgun shells;

d.  Klee wrote that the Benelli SuperNova shotgun had a black synthetic stock. He then sent pictures the next day and told Holt the firearm with a scope was a .22 caliber rifle (Exhibit 2), the shotgun with a wood stock was a Remington 870 Express Magnum (Exhibit 3), and the synthetic stock shotgun was a Benelli SuperNova (Exhibit 4). Agent Excell retrieved these pictures (Exhibits 2-4) from Holt and confirmed that they appear to show the weapons Klee was offering to sell;

e.  Klee sent a screenshot from the "truegunvalue.com" website to Holt (Exhibit 5) showing him the suggested price of a used Benelli Nova shotgun, in an attempt to persuade Holt to buy the weapon; and

f.  When Klee offered to trade a .22 caliber "Remington 537 semi auto" without a scope for Holt's binoculars, he was likely referring to a Remington model 597 rifle.

76.     On May 5, 2022, Agent Excell travelled to Holt's residence in Enterprise, Utah to speak to him about his gun dealings with Klee. Holt was not home, but his mother provided the agent with Holt's cell phone number.

77.     Agent Excell reached Holt by phone soon thereafter.

78.     Holt explained that he did contact Klee via Facebook Messenger, but he was unable to purchase a firearm or any other items from him.

79.     Upon request, Holt sent Agent Excell photos of guns for sale that Klee had sent Holt on Facebook Messenger (Exhibits 2-4) along with a screenshot showing the value of the Benelli Nova shotgun (Exhibit 5).

80.     According to the agent, Klee's conversation with Holt showed Klee offered to sell to or trade with Holt at least five different weapons.

81.     What appears to be a black safe and a green safe can be seen behind the weapons in the photos in Exhibits 2 and 3. These safes in the pictures are consistent with the colors of the safes found in Klee's second container. The black-colored safe is consistent with the color of the safe found to have the defendant property.

82.     The photos of weapons in front of the safes indicates that Klee had access to the weapons in the safes.

83.     The specific type of guns Klee was offering to sell to Holt in July 2021 (Benelli SuperNova Shotgun, Remington 597 rifle, and Remington 870 Shotgun) are consistent with Items 19, 5, and 6 of the defendant property.

## SUMMARY

84.     The defendant property consists of firearms or ammunition involved in violations of a criminal law and subject to forfeiture for the following reasons:

  a.  The defendant property consists of firearms and ammunition that been shipped or transported in interstate or foreign commerce;

  b.  Klee is a felon as defined in 18 U.S.C. § 922(g) as a person convicted of crimes punishable by imprisonment for a term exceeding one year;

c.  As a felon, Klee is a person prohibited from possessing or selling firearms under 18 U.S.C. § 922(g);

d.  Dejae was aware Klee was a felon, that he could not possess or sell firearms, and that she could not assist him in possessing or selling firearms;

e.  Klee admitted to recently having had a Glock firearm from Klee's father in Klee's possession;

f.  Air rifles, a hunting crossbow, and suppressors (all items Klee was prohibited from possessing) were found in the unlocked green safe;

g.  Dejae's adult son said he didn't recall the green or black safes ever being locked;

h.  Klee had access to the black safe containing the defendant property;

i.  In a text message conversation with Dakota, Klee bragged about a weapon he had recently sold and a weapon (Exhibit 1) that he possessed;

j.  In a text message conversation Klee and Dejae discussed traveling to St. George, Utah, to sell multiple guns;

k.  In a Facebook Messenger conversation with Holt, Klee offered to either sell to or trade to Holt two shotguns and a rifle. These same types of guns were later found in the black safe;

l.  Klee sent Holt three pictures of guns (Exhibits 2-4), and two of the pictures showed the guns in front of a black safe and a green safe – the same colors of safes later found in Klee's shipping container;

m. A Glock, consistent with the one described by Klee and Dejae earlier, was a part of the defendant property;

n.  A plastic Glock case, consistent with the Glock described by Klee and Dejae and the Glock found in the black safe, was found in the green safe;

o.  Klee has an extensive criminal record involving drugs and guns; and

p.   Klee and Dejae supplemented their income by selling, or otherwise possessing in or affecting commerce, firearms and ammunition, because of Klee's lack of legal income.

### FIRST CLAIM FOR RELIEF

85.    The defendant property consists of firearms and ammunition involved in or used in a knowing violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

### SECOND CLAIM FOR RELIEF

86.    The defendant property consists of firearms involved in or used in a violation of, or a conspiracy to violate, 18 U.S.C. § 922(a)(1)(A), Unlicensed Firearms Dealing and/or Manufacturing, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d).

### NOTICE TO ANY POTENTIAL CLAIMANT

If you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Supplemental Rule G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Supplemental Rule G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 also must be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such

other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 24th day of January, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*S/Joseph Bozdech*
JOSEPH BOZDECH
Assistant United States Attorney